# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

LEROY PENNINGTON,

    Petitioner,

v.                                      Case No. 3:21-cv-47-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

### I.   Status

Petitioner Leroy Pennington, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for three counts of sale or delivery of cocaine and one count of sale or delivery of heroin. He is serving a ten-year term of incarceration. Respondents responded. See Doc. 10 (Resp.).[1]

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

Petitioner declined to file a reply. See Doc. 13. This case is ripe for review.[2]

## II. Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

2

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

3

> quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

4

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

5

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

6

### III. Factual History

The facts of the case are taken from Petitioner's initial brief filed on direct appeal. Resp. Ex. 6.

> [Appellant] was charged by information with three counts of sale of cocaine and one count of sale of heroin. [Appellant] was tried by [a] jury and convicted as charged. Appellant was sentenced to ten years in prison for each count. Each sentence was imposed concurrently.
>
> . . . .
>
> At trial, Detective Sylvia Mitchell of the Jacksonville Sheriff's Office (JSO) testified that she was working undercover attempting to make drug purchases in the Eureka Gardens apartment complex in August of 2016. She testified that on August 16, 2016, she purchased $60 worth of crack cocaine from Appellant. She testified that another undercover officer, Detective Robin Waters, was with her during the undercover operation. She testified that she audio and video recorded the $60 cocaine transaction with Appellant. She testified that Appellant came out of apartment number 106 in order to sell her the cocaine. She testified that Appellant gave her a cell phone number and identified himself as "Champ[.]" The video of the sale and the cocaine were both introduced into evidence as Exhibit[s] 1 and 2. She testified that after the sale she left the apartment complex and field-tested the suspected crack cocaine and that it tested positive for the presence of cocaine.
>
> Mitchell testified that she returned to the same apartment complex the next day, on August 17, 2016, and purchased another $40 worth of crack cocaine from Appellant. This sale was also video and audio recorded. The recording and the cocaine were introduced into

7

evidence. Detective Waters was also present for this transaction.

Mitchell testified that on August 23, 2016, she and Waters were parked outside of a convenience store in the same neighborhood. They were both still in their undercover capacity. Mitchell testified that Appellant approached them and then sold them $8 worth of heroin. This sale was also audio and video recorded. The recording and the heroin were introduced into evidence. Mitchell testified that Appellant referred to the heroin as "boy," which is a slang term for heroin. A field test of the suspected heroin tested positive for heroin.

She testified that on August 25, 2016, she purchased $80 worth of cocaine from Appellant outside of apartment number 106. The sale was video and audio recorded. The cocaine and recording were introduced into evidence. She testified that the suspected crack cocaine field-tested positive for the presence of cocaine. She testified that she then sought a search warrant for apartment number 106. The search warrant was executed on September 15, 2016. Appellant was arrested there. She testified that the drug seller never gave her the name "Leroy Pennington[.]" She testified that when she gave an earlier deposition about the sales she did not mention the seller's tattoos.

The State had Appellant unbutton his shirt and show the jury the tattoos on his chest and neck over Appellant's attorney's objection. Detective Robin Waters then testified that she was present for the three cocaine sales and the heroin sale and that Appellant was the seller in each instance. Waters testified that she remained in the car while Mitchell completed the transactions.

Officer Nicholas Shobe testified that he participated in the execution of the search warrant at apartment

> number 106 and that there was an adult male present in the apartment. He testified that the adult male was Appellant and that he identified himself as Leroy Pennington.
>
> Steven Miles, an FDLE lab analyst, testified that he analyzed the suspected drugs bought by JSO in this case. He testified that . . . Exhibits 2, 4, and 8 contained cocaine. He testified that Exhibit 6 was heroin.

Resp. Ex. 6 at 6-9 (record citations omitted).

## IV. The Petition

### a. Ground One

Petitioner alleges that his trial counsel was ineffective for misadvising Petitioner to waive severance of the charged offenses for trial. Doc. 1 at 5. According to Petitioner, trial counsel incorrectly advised him that if he did not agree to waive severance of the counts, the evidence of each offense would be admissible as Williams[3] Rule evidence in each trial. Id.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion filed in state court. Resp. Ex. 10 at 2. The trial court summarily denied the claim, finding:

> Defendant alleges counsel was ineffective for misadvising Defendant to waive severance of Counts One, Two, Three, and Four. While counsel filed a "Motion for Severance of Counts," Defendant agreed to withdraw the Motion because counsel misadvised him that each count could be used as Williams [R]ule evidence during the trials on the other counts.

---

[3] Williams v. State, 110 So. 2d 654 (Fla. 1959).

9

Defendant also claims that counsel did not advise him that the trial court would determine the admissibility of Williams [R]ule evidence after a hearing. Counsel's failure to advise Defendant resulted in his waiver of a hearing on the "State's First Notice of Other Crimes, Wrongs or Acts Evidence" ("Notice"). Defendant claims that if counsel had not misadvised him, then he would have sought a separate trial for each count and the jury would not have learned that he had been charge[d] on four separate counts.

Initially, this Court notes that, although the State filed its Notice, the record does not demonstrate that the trial judge made a ruling on the admissibility of the Williams [R]ule evidence or that Defendant waived a hearing on the Notice. The State also did not use the four transactions as Williams [R]ule evidence during trial.

Counsel was not deficient for advising Defendant to waive severance of the counts because each count could be used as Williams [R]ule evidence during the trials on the remaining counts. Sufficient similarities existed among Defendant's transactions with undercover Detectives Sylvia Mitchell ("Detective Mitchell") and Robin Waters ("Detective Waters"). The four transactions occurred within a ten day period of time. Three of the transactions, during which the detectives purchased crack cocaine from Defendant, occurred at the same location, Eureka Garden Apartments, near the same apartment unit. The third transaction, during which the detectives purchased heroin from Defendant, occurred at a convenience store; however, the store and Eureka Garden Apartments were located on the same street. Defendant identified himself as "Champ" to the detectives, and they used this alias when speaking with Defendant during the deals. Further, the undercover detectives attempted to contact Defendant using the same mode of communication, a phone, after the first

transaction when Defendant gave his phone number to them.

The State could have offered the transactions as Williams [R]ule evidence to prove identity. Defense counsel disputed Defendant's identity as the dealer. However, Detective Mitchell identified Defendant as the dealer in each transaction, and Detective Waters testified that she identified "Champ" as Defendant after the first transaction by using his physical description, phone number, and address in a database search. At a trial on a severed count, the State then could use the evidence to further establish Defendant's identity. See Johnson v. State, 796 So. 2d 1196, 1198 (Fla. 4th DCA 2001) (finding the lower court's denial of defendant's motion to sever was harmless because evidence of three hand-to-hand drug transactions could have been introduced in separate trial as similar act evidence to prove identity); Vinas v. State, No. 3D18-1433, 2020 WL 355585, at * 1, *3 (Fla. 3d DCA Jan. 22, 2020) (citing Johnson, 796 So. 2d at 1198).

Nevertheless, counsel's alleged deficiency did not result in prejudice given the overwhelming evidence presented against Defendant at trial. See Pardo v. State, 941 So. 2d 1057, 1070-72 (Fla. 2006) (determining counsel's alleged deficiency in waiving the severance of offenses did not result in prejudice because of the overwhelming evidence against the defendant). Detectives Mitchell and Waters identified Defendant as the dealer who sold crack cocaine and heroin to them during their investigation. The State presented video evidence of each transaction. The field tests conducted by the detectives, as well as the laboratory tests conducted by a Florida Department of Law Enforcement analyst, demonstrated that Defendant had provided the detectives with crack cocaine on three occasions and heroin on one occasion. Accordingly, this Court denies Ground One.

Resp. Ex. 10 at 18-20 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 11.

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. Similar fact evidence, also known as "collateral crime evidence" or <u>Williams</u> Rule evidence, is evidence that points to the commission of a separate crime, and is admissible if relevant for any purpose except demonstrating bad character or propensity. <u>Williams</u>, 110 So. 2d at 654. <u>Williams</u> Rule evidence can be relevant to establish the identity of a perpetrator. <u>See</u> <u>Conahan v. State</u>, 844 So. 2d 629, 632-34 (Fla. 2003). Here, as the trial court explained in its order, if Petitioner did not waive his motion to sever the counts, evidence of each separate offense still would be presented to the jury as <u>Williams</u> Rule evidence during Petitioner's separate trials. Indeed, the location and circumstances of all four sales were similar, and evidence of each sale would be relevant to a misidentification defense as the officers who participated in Petitioner's four drug sales identified him as the dealer.

Petitioner has neither shown counsel was deficient, nor has he shown that but for counsel's alleged error, the outcome of his trial would have been different had he pursued the motion to sever. To that end, upon thorough review of the

record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground One is denied.

### b. Ground Two

Petitioner alleges his trial counsel was ineffective for failing to object to the prosecutor becoming a witness during Petitioner's sentencing hearing and testifying to "highly inflammatory facts" not in evidence. Doc. 1 at 7. According to Petitioner, the prosecutor commented on uncharged crimes for which Petitioner was not convicted; and the trial court considered those offenses when sentencing him. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 10 at 7. The trial court summarily denied the claim:

> Defendant claims counsel was ineffective for failing to object to the prosecutor's arguments at sentencing. Defendant specifically takes issue with the prosecutor's statement about the presence of drugs around Defendant's children:
>
>> And I think Mr. Cobbin and I have learned during the depositions of Detective Waters and Detective Mitchell that the allegation was that his children were in the apartment complex in which he was selling drugs out of. And, in fact, Mr. Cobbin and I learned during the depositions of those detectives that when the search warrant

13

> was executed, there was crack cocaine all over the apartment and the kids were sitting right in the living room.

Defendant claims counsel should have objected because this statement was untrue and did not constitute a "fact in evidence." Further, it resulted in the consideration of an uncharged crime. If counsel had objected to this statement or contested its veracity, then the outcome of Defendant's sentencing would have been different.

This Court finds that the prosecutor did not offer the above statement as evidence of an uncharged crime. The prosecutor responded to defense counsel's argument that Defendant should receive a limited term of imprisonment so that he could receive addiction treatment and care for his children. In response, the prosecutor argued that Defendant had not attempted to change his ways even after the birth of his children and noted the children's presence during the execution of the search warrant. The prosecutor did not present this statement as evidence of an uncharged crime and based it on evidence from the record.

Nevertheless, counsel's alleged deficiency did not result in prejudice. Counsel corrected the prosecutor's statements by noting that he believed law enforcement found only marijuana and a scale during the search. The detectives testified in their depositions that children were present in the house when they executed a search warrant in the case of Defendant's girlfriend, but the detectives did not testify that Defendant was present at that time. Defendant then clarified that he never sold drugs in front of his daughter.

Further, no evidence exists that the prosecutor's statement factored into the trial judge's sentencing decision. Defendant stated that he never sold drugs in front of his daughter; the trial judge responded, "I understand." When pronouncing the sentence, the trial

14

> judge noted that he chose not to order drug treatment in lieu of a prison sentence because of Defendant's prior record, which included violent crimes and prior sales, as well as the seriousness of the offenses. Accordingly, this Court denies Ground Two.

Resp. Ex. 10 at 20-21 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 11.

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that during Petitioner's sentencing hearing, trial counsel highlighted Petitioner's relationship with his young daughter and asked for the imposition of a sentence that allowed Petitioner to receive parental counseling and treatment for his drug addiction. Resp. Ex. 10 at 299. In response, the state explained that before being charged with the drug offenses, Petitioner took no actions showing a desire to change his ways despite having an infant child. Id. at 303. The state also argued that when officers executed the search warrant, crack cocaine was found all over Petitioner's apartment and the children were located in the living room among the drugs. Id. Petitioner then addressed the court and stated he never sold drugs in front of his daughter, to which the trial court replied that it understood. Id. at 307. The trial court then explained its sentencing decision was based on Petitioner's criminal record and the severity

15

of the current convictions. Id. at 309-11. The trial court clarified that Petitioner's parenting skills played no part in its sentencing decision and explained that it did not question Petitioner's desire to be a good parent. Id. at 309-10.

As such, Petitioner has neither shown counsel was deficient for failing to object, nor has he shown that but for counsel's alleged error, the outcome would have been different. To that end, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Two is denied.

### c. Ground Three

Petitioner argues that his sentence is illegal because he was convicted of four separate counts, but the trial court only imposed a general ten-year term of incarceration rather than sentencing him separately for each conviction. Doc. 1 at 8-9.

Petitioner raised this issue in his Rule 3.850 motion. Resp. Ex. 10 at 9. The trial court summarily denied the claim:

> Defendant asserts his sentence is illegal because the trial court allegedly entered one general sentence for Counts One, Two, Three, and Four. "A general sentence . . . occurs when the trial court imposes only one

16

> sentence after a defendant has been convicted of several offenses." Carroll v. State, 361 So. 2d 144, 147 (Fla. 1978). A court may not impose a general sentence. Parks v. State, 765 So. 2d 35, 35 (Fla. 2000) (finding that general sentences have been prohibited since 1977). However, a general sentence "is distinguished from . . . concurrent sentences, where several sentences are served simultaneously." Carroll, 361 So. 2d at 147.
>
> The record demonstrates that the trial court did not impose a general sentence, but imposed concurrent sentences where Defendant would simultaneously serve the sentence for each count. During the sentencing hearing, the trial court imposed a ten-year term of imprisonment for each count and ordered those sentences to run concurrent with one another:
>
>> Trial Court: The three counts of sale of cocaine and the one count of sale of heroin, all second-degree felonies, the Court adjudicates you guilty of that offense. It's the judgment and sentence of this Court that you be adjudicated guilty of those offenses, serve ten years in the Florida state prison, with credit for - how much time?
>>
>> The Clerk: 175 days.
>>
>> Trial Court: 175 days time served . . . those sentences will run concurrent with each other . . . .
>
> The written judgment and sentence also demonstrates the trial court properly apportioned the sentences. Accordingly, this Court denies Ground Three.

Resp. Ex. 10 at 22 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion.

17

Resp. Ex. 11.

First, the Court finds that Petitioner's challenge to his sentence makes no showing of a federal constitutional violation and is instead an issue of state law not cognizable on federal habeas review. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[F]ederal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."). Second, even if this claim were cognizable on federal habeas review, it lacks merit because the trial court did not impose one general sentence but issued a ten-year term of incarceration on each count; and it also ordered that each sentence run concurrent with the other. See Resp. Ex. 10 at 311-12. Thus, Ground Three is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: Leroy Pennington, #680864
   Counsel of record

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

19